# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

LARRY KLAYMAN,

               Plaintiff,

        v.

THOMAS J. FITTON,

               Defendant.

Civil Action No. 1:19-cv-020544

---

## <u>DECLARATION OF LARRY KLAYMAN</u>

I, Larry Klayman, being over eighteen years of age and duly competent to testify, hereby swear and affirm as follows:

1.     I have personal knowledge of the following facts and if called upon as a witness, could testify competently thereto.

2.     I am a citizen of Florida and have, at all material times, done business in this judicial district.

3.     I began my legal career in this district in Miami as an associate for Blackwell & Walker, which was the largest litigation firm in Florida at the time. I was admitted into The Florida Bar having been sworn in by this Court on December 7, 1977. I have practiced law in this district continuously and extensively throughout my forty-two-year career and have active cases pending in this district and elsewhere in Florida, including during the period that I was a trial attorney for the U.S. Department of Justice's Antitrust Division, from 1980 to 1982.

4.     I conceived of and founded Judicial Watch, Inc. ("Judicial Watch") in 1994, a public interest group that's mission was to investigate and prosecute government corruption and abuse. I was the Chairman, General Counsel, and Corporate Treasurer of Judicial Watch until I

voluntarily departed in 2003 to run as a candidate for the U.S. Senate in Florida in the Republican primary election.

5.    I hired Defendant Fitton in 1998 to work for Judicial Watch at first as my contract assistant.

6.    Upon my voluntary departure from Judicial Watch in 2003 to run for the U.S. Senate in Florida, I discovered that Defendant Fitton had lied to me upon my hiring him and that in fact he had not graduated from George Washington University, as he represented to me personally and in his resume.

7.    I am now the founder, Chairman and General Counsel of Freedom Watch, Inc., which also has the similar goal of fighting government corruption through legal advocacy. I also am in private practice with The Klayman Law Group, P.A.

8.    Roger Stone ("Stone") is an individual and citizen of Florida. Special Counsel Robert Mueller recently indicted Stone as part of the alleged "Russian Collusion" investigation.

9.    Stone was at all material times in Florida and in this district.

10.    Stone is based in Florida and continuously lives in Florida.

11.    Stone's address in Florida is 447 Coral Way, Fort Lauderdale, FL 33301.

12.    I was recently forced to sue Stone for other slanderous and defamatory statements and a process server who works for me personally served Stone at his residence in Fort Lauderdale, Florida, verifying his address. *See* Exhibit A.

13.    Defendant Fitton and Stone are working together as co-conspirators to try to harm me in this district, in Florida and the United States. Compl. at ¶ 14.

14.    The January 18, 2019 InfoWars video contained several false, misleading and defamatory statements concerning me. Stone published at the direction of Defendant Fitton,

"[h]e [me] was ousted at Judicial Watch. Ask Tom Fitton why he left. He left because of a sexual harassment complaint." Compl. at ¶ 16.

15.     Defendant Fitton and Stone communicated and published the false and defamatory statements by phone, email, text or in person in Florida and in this district. Discovery will reveal which vehicle(s) Defendant Fitton and Stone used to conspire together to hurt me in Florida. *Id*. at ¶ 20, 28, 31, 35.

16.     Stone made this false, defamatory statement at the direction of Defendant Fitton, whom he attributes this false and defamatory statement. *Id*. at ¶ 17.

17.     Defendant Fitton published this false statement to Stone, located in Florida at the time, and the false statement was aimed at me, a Florida citizen. *Id*. at ¶ 20.

18.     Defendant Fitton acted with actual malice and a reckless disregard for the truth because he knew that I left Judicial Watch to run for the Senate and it was not a result of a sexual harassment complaint. *Id*. at ¶ 18. There was never any sexual harassment complaint made against me during my time at Judicial Watch, nor has any court made such a ruling, as the jury verdict in *Klayman v. Judicial Watch, Inc*., 06-cv-00670 which Defendant Fitton refers to makes no such finding.

19.     In June 2014, a jury of Plaintiff's peers in this district found Judicial Watch, run by Defendant Fitton as president, liable for malicious defamation. *See* Exhibit B (Jury Verdict).

20.     The jury's verdict included a punitive damages award. *See* Exhibit C (Final Judgment).

21.     I know first-hand that Defendant Fitton has a demonstrated history of lying under oath. For example:

- Just two years ago, in *Klayman v. Judicial Watch, Inc.*, 1:17-cv-00034 (D.D.C. 2017), a case that I was forced to bring because of Defendant Fitton's and Judicial Watch's intentional interference with a prior client, Defendant Fitton signed a false affidavit in an attempt to avoid being deposed by me. On January 11, 2018, Defendant Fitton swore under oath that he had no communication with a Mr. Basulto and that he possessed no knowledge or information relevant to the dispute. Specifically, he swore under oath, (1)"I have had no communication (written, oral or otherwise) with Basulto [particular person] in several years, except that Judicial Watch did send him a Christmas card each year that I signed"; (2)"I do not possess any knowledge or information relevant to this dispute"; (3)"If compelled to appear at a deposition, I will not be able to answer any questions regarding this lawsuit as I do not have any information." *See* Exhibit D (Fitton Affidavit). But, Paul Orfanedes, Judicial Watch's Director of Litigation, Corporate Secretary and member of the Board of Directors, testified also under oath during a deposition that Defendant Fitton indeed had knowledge of the dispute and in fact signed the legal representation agreement:

> Q – Mr. Klayman: Is there any written agreement between Judicial Watch and Basulto with regard to collection of the Cuba judgment?
> A – Mr. Orfanedes: Yes.
> Q – Mr. Klayman: And is that in your files, in Judicial Watch's files?
> A – Mr. Orfanedes: I believe so.
> Q – Mr. Klayman: When was that agreement executed?
> A – Mr. Orfanedes: I believe it was December of 2016.
> Q – Mr. Klayman: **Did Mr. Basulto sign it?**
> A – Mr. Orfanedes: **Yes.**
> Q – Mr. Klayman: **Who signed it on behalf of Judicial Watch?**
> A – Mr. Orfanedes: **Mr. Fitton.**
> Q – Mr. Klayman: Mr. Fitton reviewed that agreement before he signed it, correct?
> A – I would assume so.

*See* Exhibit E (Orfanedes Deposition).

- Next Defendant Fitton, in order to boost his own standing in the

4

conservative and public interest community and elsewhere, refuses to admit – and has lied under

oath again – that I founded Judicial Watch. A simple "Google search" proves this to be not only

false but also outrageous. During the deposition in the case where I won a jury verdict and

judgment against Judicial Watch in the amount of $181,000, Defendant Fitton falsely testified

under oath that he "doesn't know" who founded Judicial Watch.

> Q – Mr. Klayman: I am the founder of Judicial Watch, correct?
> A – Mr. Fitton: I don't know.
> Q – Mr. Klayman: Who's the founder then if you don't know?
> A – Mr. Fitton: Well, you've told me you're the founder, but I don't have any reason to believe that you're a credible person anymore, so I don't know.
> Q – Mr. Klayman: Are you the founder?
> A – Mr. Fitton: No.
> Q – Mr. Klayman: You are the president of Judicial Watch currently; are you not?
> A – Mr. Fitton: Yes.
> Q – Mr. Klayman: As the president of Judicial Watch, you have access to all of Judicial Watch's records, correct?
> A – Mr. Fitton: No. I don't know what you mean by access.
> Q – Mr. Klayman: You have the ability to search through Judicial Watch's files to determine who's the founder of Judicial Watch, correct; you're the president?
> A – I – I don't know what that – do I have the ability to search through Judicial Watch's files to determine who the founder is" Yes – no. No, I don't – I don't even know what that question means. I don't know what founder means.
> Q – Mr. Klayman: You don't know what the word "founder" means?
> A – Mr. Fitton: No, not in the context you're using it.

See Exhibit F (Fitton Deposition, January 29, 2014). The South Florida Sun Sentinel published

an article titled "Republican Candidates for U.S. Senate[]" which clearly describes me as "A 52-

year-old lawyer from Miami, Larry Klayman made his reputation as the founder of Judicial

Watch, a Washington-based conservative court and government watchdog that has sued

Democratic and Republican administrations for access to records." See Exhibit G. Then again,

more recently, U.S. News and World Report wrote an article titled "Nine Companies Tied to

PRISM, Obama Will Be Smacked with Class-Action Lawsuit Wednesday" about the NSA case I

filed against the Obama administration for illegal wiretapping mass surveillance, which

recognized, as everyone knows, that I am the founder of Judicial Watch, as tens if not hundreds of other newspapers, magazines, cable news outlets, and other publications have done over the course of my career. *See* Exhibit H ("Klayman founded the pro-transparency legal group Judicial Watch in 1994 and currently leads an organization called Freedom Watch.").

22.    As an attorney, I rely on my virtue, as my reputation will determine the amount of clients that come to me for their legal matter in the public interest and privately.

23.    Any damage done to my reputation harms my ability to practice law as a lawyer particularly in this district, which is my community.

24.    Defendant Fitton's statement in this instance have caused harm to my reputation and well being in this district, throughout Florida, the United States, and globally.

25.    There was never any single instance of someone making a sexual harassment complaint against me during my almost ten years at Judicial Watch.

26.    Defendant Fitton acted with malice when he published to Stone that I was "ousted" because of a sexual harassment complaint because he knew that was false. Compl. at ¶¶ 19, 24, 30, 36.

27.    I was damaged monetarily, as well as to my reputation and emotionally, by the defamatory and other tortious acts of Defendant Fitton.

28.    I attest that Defendant Fitton's affidavit used for purposes of the *Basulto* case in Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is a true and correct copy of the original.

29.    I attest that the deposition transcript used in Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is a true and correct copy of the original.

30.     I attest that all exhibits attached to this affidavit are true and correct copies of the originals.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 18, 2019.

*/s/ Larry Klayman*
Larry Klayman

# EXHIBIT A

# AFFIDAVIT OF PROCESS SERVER

### Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida

**Larry Klayman, Individually**

       Plaintiff(s),

VS.

**Roger Stone, Individually**

       Defendant(s).

Attorney: Larry Klayman, Esq.

Klayman Law Firm
2020 Pennsylvania Avenue, N.W., #345
Washington DC 20006

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**\*238978\***

**Case Number: CACE-19-002672**

Legal documents received by Same Day Process Service, Inc. on **02/13/2019** at **10:52 AM** to be served upon **Roger Stone, Individually at 447 Coral Way, Fort Lauderdale, FL 33301**

I, **Michael R. Meyer - CPS2016/SPS1460**, swear and affirm that on **February 14, 2019** at **3:48 PM**, I did the following:

**Personally** Served **Roger Stone, Individually** the person listed as the intended recipient of the legal document with this **Summons; Complaint; Exhibits** at **447 Coral Way , Fort Lauderdale, FL 33301.**

**Description of Person Accepting Service:**
Sex: Male Age: 65 Weight: 161-200 lbs Skin Color: Caucasian Hair Color: White

**Supplemental Data Appropriate to this Service:**

I declare under penalty of perjury that the foregoing information contained in this affidavit is true and correct and that I am a professional process server over the age of 18 and have no interest in the above legal matter.

_2/15/19_

**Michael R. Meyer - CPS2016/SPS1460**
Process Server

**Same Day Process Service, Inc.**
1413 K St., NW, 7th Floor
Washington DC 20005

**(202)-398-4200**

Internal Job ID:238378

Process Server

State of _Florida_

County of _Palm Beach_

Subscribed and Sworn to before me on this

_15_ day of _February_, 20_19_

_____
Signature of Notary Public



**Jacqueline McMullen**
COMMISSION # GG288709
EXPIRES: Jan. 21, 2023
Bonded Thru Aaron Notary

# EXHIBIT B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 13-20610-CIV-ALTONAGA

**LARRY KLAYMAN,**

     Plaintiff,

v.

**JUDICIAL WATCH, INC.,**

     Defendant.

_____/

## <u>Verdict Form</u>

We, the jury, unanimously find as follows:

1.    Do you find from a preponderance of the evidence that Plaintiff Larry Klayman was defamed by Defendant Judicial Watch?

     Yes ✓    No _____

(If your answer is "yes," proceed to the next question. If the answer is "no," sign the verdict form.)

2.    Do you find from a preponderance of the evidence that Plaintiff Larry Klayman should be awarded compensatory damages against Defendant Judicial Watch?

     Yes ✓    No _____

If your answer is "Yes,"

     in what amount: $ 156,000.00 .

(If your answer is "yes," skip question 3 and proceed to question 4. If your answer is "no," proceed to question 3.).

3.     Do you find from a preponderance of the evidence that Plaintiff Larry Klayman should be awarded nominal damages against Defendant Judicial Watch?

Yes _____     No ✓_____

If your answer is "Yes,"

in what amount: $ N/A .

(Proceed to question 4.).

4.     Under the circumstances of this case, state whether you find by clear and convincing evidence that punitive damages are warranted against Defendant Judicial Watch:

Yes ✓     No _____

If your answer is "Yes,"

in what amount: $ 25,000.00 .

So say we all this 10 day of June, 2014.

_____
Foreperson

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 13-20610-CIV-ALTONAGA

**LARRY KLAYMAN**,

     Plaintiff,

v.

**JUDICIAL WATCH, INC**.,

     Defendant.

_____/

### FINAL JUDGMENT

    **THIS CAUSE** came for trial before the Court and a jury, United States District Judge, Cecilia M. Altonaga, presiding, and the issues having been duly tried and the jury having duly rendered its verdict on June 10, 2014, it is

    **ORDERED AND ADJUDGED** that Judgment is entered in favor of Plaintiff, Larry Klayman, and against Defendant, Judicial Watch Inc., in the amount of **$156,000.00** for compensatory damages and **$25,000.00** for punitive damages, totaling **$181,000.00**, for which sum let execution issue. Requests for costs and attorneys' fees shall not be submitted until after any post-trial motions are decided or an appeal is concluded, whichever occurs later. This judgment shall bear interest at the rate as prescribed by 28 U.S.C. section 1961, and shall be enforceable as prescribed by 28 U.S.C. sections 2001–2007, 28 U.S.C. sections 3001–3308, and Federal Rule of Civil Procedure 69(a). The Clerk shall mark this case closed.

    **DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of June, 2014.

                                 _Cecilia M. Altonaga_
                                 **CECILIA M. ALTONAGA**
                                 **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN

        Plaintiff,

v.

JUDICIAL WATCH, INC.

        Defendant.

Case No: 1:17-cv-00034-TJK

## DECLARATION OF THOMAS J. FITTON

I, THOMAS J. FITTON, declare as follows:

1.     My name is Thomas J. Fitton.  I am over the age of eighteen and have personal knowledge of the facts set forth below.

2.     I am the President of Judicial Watch, Inc., ("JW").  I have served in this capacity since on or about July 6, 1998.  I also am a member of JW's Board of Directors.

3.     On September 19, 2003, JW and Plaintiff Larry Klayman ("Klayman") executed a Confidential Severance Agreement regarding the terms of his separation from JW. After his departure from JW, Klayman engaged in a campaign to harass JW and its current officers and directors. Since 2006, Klayman has filed at least 13 lawsuits other than this case: (1) *Klayman v. Judicial Watch, Inc., et al.*, Case No. 06-670 (CKK) (D. D.C.) (filed 04/12/06) (pending); (2) *Klayman v. Judicial Watch, Inc., et al.*, Case No. 07-22413-AJ (S.D. Fla.) (filed 07/23/07) (dismissed); (3) *Klayman v. Judicial Watch, Inc., et al.*, Case No. 07-37924 CA 08 (Miami-Dade Co. Cir. Ct.) (filed 11/06/07) (dismissed); (4) *Cobas v. Judicial Watch, Inc., et al.*, Case No. 05-17413 CA 01 (Miami-Dade Co. Cir. Ct.) (filed 08/25/05) (dismissed); (5) *Benson v. Judicial Watch, Inc., et al.*, Case No. 0000520 B (Sup. Ct. District of Columbia) (filed 01/25/07)

(dismissed); (6) *Paul v. Judicial Watch, Inc., et al.*, Case No. 07-279 (RCL) (D. D.C.) (filed 02/06/07) (dismissed); (7) *Klayman v. Judicial Watch, Inc.*, Case No. 2010-sc-005626 (Sup. Ct. District of Columbia - Small Claims) (filed 09/21/10) (dismissed); (8) *Klayman v. Judicial Watch, Inc., et al.*, Case No. 13-20610-Altonaga/Simonton (S.D. Fla.) (filed 02/19/13) (judgment for LEK); (9) *Klayman v. Judicial Watch, Inc.*, Case No. 15-CA-232 (Sup. Ct. District of Columbia) (filed 01/13/15) (dismissed); (10) *Klayman v. Judicial Watch, Inc.*, Case No. 16-mc-1430 (RBW) (D. D.C.) (filed 07/18/16) (pending); (11) *Klayman v. Judicial Watch, Inc.*, Case No. 17-CA-4252 B (Sup. Ct. District of Columbia) (filed 06/20/17) (pending); (12) *Klayman v. Judicial Watch, Inc.*, Case No. 2017 CA 004940 B (Sup. Ct. District of Columbia) (filed 07/20/17) (dismissed); and (13) *Freedom Watch, Inc. v. Judicial Watch, Inc., et al.*, Case No. 17-cv-22627-FAM (S.D. Fla.) (pending) (in addition to being the head of "Freedom Watch, Inc.," Klayman filed the lawsuit for the organization).

4.    The lawsuit before this Court alleges that Klayman had a contractual relationship with Jose Basulto to provide legal services to collect a judgment against Cuba (the "Cuba Judgment"). It is further alleged that:

- On or about November 30, 2016, Basulto informed Klayman that he decided to have JW enforce the Cuba Judgment.

- During the phone call, Basulto provided Klayman with information showing that, on or about November 30, 2016, someone from JW stated to Basulto that Klayman did not have the resources or means to enforce the Cuba Judgment.

- As a result of the alleged statement attributed to JW, Basulto authorized JW to enforce the Cuba Judgment.

- On information and belief, Chris Farrell, a member of JW's Board of Directors was one of the persons who stated that Klayman did not have the resources or means to enforce the Cuba Judgment.

- Paul Orfanedes and I also made the alleged statement to Basulto.

5.      I have had no communication (written, oral or otherwise) with Basulto in several years, except that Judicial Watch did send him a Christmas card each year that I signed. I have no knowledge regarding Klayman's alleged representation of Basulto nor was I ever aware, prior to the lawsuit, that Klayman alleged he represented Basulto regarding the Cuba Judgment. At no time did I direct or authorize anyone to communicate with Basulto regarding Klayman's alleged representation of Basulto, nor am I aware of any such communications. In summary, I do not possess any knowledge or information relevant to this dispute.

6.      If compelled to appear at a deposition, I will not be able to answer any questions regarding this lawsuit as I do not have any information.

I HEREBY DECLARE, under penalty of perjury that the foregoing is true and correct. Executed in Washington, D.C., on this 11th day of January 2018.

Thomas J. Fitton

# EXHIBIT E



**Planet Depos**
We Make It *Happen*™

# Transcript of Paul Orfanedes

**Date:** January 17, 2018
**Case:** Klayman -v- Judicial Watch

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

Transcript of Paul Orfanedes
Conducted on January 17, 2018                    57

1        Q   Was the payment then remitted to                  10:39:43

2    Mr. Basulto?                                               10:39:47

3        A   Yes.  I think it went directly to him.            10:39:49

4        Q   Did Judicial Watch keep any of that money?        10:39:52

5        A   No.  We don't -- we provide pro bono legal        10:39:55

6    services.                                                 10:39:57

7        Q   Is there any written agreement between            10:39:58

8    Judicial Watch and Basulto with regard to                 10:40:02

9    collection of the Cuba judgment?                          10:40:06

10       A   Yes.                                               10:40:07

11       Q   And is that in your files, in Judicial            10:40:08

12   Watch's files?                                            10:40:13

13       A   I believe so.                                     10:40:14

14       Q   When was that agreement executed?                 10:40:15

15       A   I believe it was December of 2016.                10:40:17

16       Q   Did Mr. Basulto sign it?                          10:40:22

17       A   Yes.                                              10:40:29

18       Q   Who signed it on behalf of Judicial Watch?        10:40:30

19       A   Mr. Fitton.                                       10:40:32

20       Q   Mr. Fitton reviewed that agreement before        10:40:34

21   he signed it, correct?                                    10:40:41

22       A   I would assume so.                                10:40:42

# EXHIBIT F

# In The Matter of:

*LARRY E. KLAYMAN*
*v.*
*JUDICIAL WATCH, INC.*

---

*THOMAS J. FITTON*
*January 29, 2014*

---

**MERRILL LAD**
1325 G Street NW, Suite 200, Washington, DC
Phone: 800.292.4789   Fax: 202.861.3425

THOMAS J. FITTON - 1/29/2014

Page 10

1  notwithstanding Paul Weyrich's television company?
2      A   Well, I presume Weyrich was paying y'all to
3  do that or paying you directly, so I presume it was
4  Judicial Watch at the time.
5      Q   I'm the founder of Judicial Watch, correct?
6      A   I don't know.
7      Q   Who's the founder then if you don't know?
8      A   Well, you've told me you're the founder,
9  but I don't have any reason to believe that you're a
10  credible person anymore, so I don't know.
11      Q   Are you the founder?
12      A   No.
13      Q   You are the president of Judicial Watch
14  currently; are you not?
15      A   Yes.
16      Q   As the president of Judicial Watch, you
17  have access to all of Judicial Watch's records,
18  correct?
19      A   No.  I don't know what you mean by access.
20      Q   You have the ability to search through
21  Judicial Watch's files to determine who's the
22  founder of Judicial Watch, correct; you're the

Page 11

1  president?
2      A   I -- I don't know what that -- do I have
3  the ability to search through Judicial Watch's files
4  to determine who the founder is?  Yes -- no.  No, I
5  don't -- I don't even know what that question means.
6  I don't know what founder means.
7      Q   You don't know what the word "founder"
8  means?
9      A   No, not in the context you're using it.
10      Q   Does it mean a person who conceived of the
11  concept of Judicial Watch?
12      A   I do not have the ability to search through
13  records to find out, because I'm not aware any
14  records exist, showing who conceived the founding of
15  Judicial Watch.
16      Q   You have the Articles of Incorporation of
17  Judicial Watch; do you not?
18      A   Yes.
19      Q   And they list me as the incorporator,
20  correct?
21      A   Yes.
22      Q   Okay.  They don't list you, right?

Page 12

1      A   That's correct.
2      Q   And they don't list anybody else, do they?
3      A   I don't know if they list anyone else on
4  those records.
5      Q   I conceived of the name "Judicial Watch,"
6  correct?
7      A   I don't know.  That's what you say.
8      Q   I designed the trademark for Judicial
9  Watch; did I not?
10      A   I don't know.  That's what you say.
11      Q   I conceived of the logo for Judicial Watch?
12      A   I don't know.  That's what you say.
13      Q   The offices which were occupied by Judicial
14  Watch in and around the time that I was working for
15  Weyrich, they were my law offices; were they not?
16      A   One more time with that question.  Repeat
17  it, please.
18      Q   The offices of Judicial Watch, in and
19  around the time that Larry Klayman, yours truly, was
20  working with you at Weyrich doing commentary, you
21  visited those offices; did you not?
22      A   Yes.

Page 13

1      Q   Okay.  And you came to know that those were
2  my law offices, correct?
3      A   They were -- yeah, your law firm's offices,
4  yes.
5      Q   At 501 School Street, Southwest?
6      A   Right.
7      Q   Correct?
8      A   Yes.
9      Q   As part of your activities, you do read the
10  newspaper from time to time, do you?
11      A   Yes.
12      Q   Okay.  And various newspapers over the
13  years have referred to me as the founder of Judicial
14  Watch, correct?
15      A   Yes.
16      Q   Have you ever sought to correct anyone that
17  wrote stories that said I was the founder to tell
18  them that I'm not?
19      A   No.
20      Q   At the time -- let's back up to the time
21  that we were working together on Weyrich's TV doing
22  commentary.  Did there come a point in time when you

4  (Pages 10 to 13)

# EXHIBIT G



ADVERTISEMENT

# Republican candidates for U.S. Senate

By **Mark Hollis and Linda Kleindienst**
Tallahassee Bureau

JUNE 11, 2004, 1:15 PM

# J ohnnie B. Byrd Jr.

A staunch conservative who is vehemently anti-tax and anti-abortion, Johnnie Byrd has been accused of using his position as House speaker to launch his U.S. Senate bid.

It was Byrd who last fall led the fight to get the Legislature and governor embroiled in the family feud over Terri Schiavo, a Pinellas County woman whose parents were trying to stop her husband from removing a feeding tube. This year, he pushed legislators to put a constitutional amendment on the fall ballot that would require parents be notified if their teenage daughter seeks an abortion.

But Byrd also moved legislation and new state spending meant to appeal to a wide range of voters -- including repeal of an unpopular, year-old phone rate-hike law and $75 million for improving security infrastructure.

The latest financial reports show him as the fund-raising leader in the Republican pack, with $2.37 million. The Plant City lawyer, 53, moved to Florida in 1988 from his birthplace, Brewton, Ala. Before winning a state House seat in 1996, the only office Byrd had ever held was on the Brewton school board.

It hasn't been a long-term goal of Byrd's to run for the Senate, but Byrd said his experience in the Legislature showed him a need for change in Washington.

"We really need to deal with taxing and spending and tort reform and health care issues at the federal level," he said.

Byrd, who for two years stonewalled any talk of tax hikes by the Legislature, calls the primary a "battle for the soul of the Republican Party." He insists there is too much spending and borrowing going on by the GOP Congress. During the spring legislative session, Byrd came under increasing criticism from the Senate, Democrats, lobbyists and even some of his own GOP House members for his ham-handed leadership approach. Even those within his own party who voted against him on the phone bill saw some of their projects mysteriously cut from the state budget. Several House Republicans have withdrawn their endorsements of his candidacy since the session ended in April.

"The only people we're concerned with are the voters," Byrd said. "I have been a person who stands by their principles of less taxes, less regulation, less litigation and family."

**Doug Gallagher**

A surprise entry into the race, Gallagher has no experience in public office but brings plenty of money and a big political name that could catapult him ahead in a crowded primary field. His brother is Tom Gallagher, Florida's chief financial officer, who has been on a statewide ballot six times -- winning four Cabinet races but losing two bids for governor.

The 55-year-old Gallagher is a software company president who has lent almost $1.3 million to his campaign and is mailing 10,000 DVDs to Republican leaders across the state to introduce himself.

With his only political experience an unsuccessful state Senate bid in 1982, Gallagher has acknowledged his well-known last name may help him. He said he entered the race to give voters the choice of a candidate "who is not a career politician."

He founded Coral Gables-based Gallagher Financial Services, which develops software for mortgage companies, in the mid-1980s with a $14,000 investment. It now has 157 employees and offices in Miami, Atlanta, Nashville and Australia.

"I think we need more successful businessmen and women, particularly those who know what it is to meet a payroll," said the one-time Catholic seminary student, shoe salesman and waiter. "I believe I understand the perspective of the average hardworking person who lives paycheck to paycheck."

Gallagher has a 30-year link with the University of Miami Diabetes Research Foundation, having helped to raise $80 million for diabetes research.

Compared to other candidates in the race, he has offered many specifics about his stance on the issues. Among his views: He wants to privatize teaching by ending tenure and paying teachers more money. He supports a flat tax and elimination of the Internal Revenue Service. He wants to allow banks and credit unions to sell health insurance, and he wants to allow retirees to work while collecting Social Security.

He has assembled a high-powered team of consultants, including a pair who advised President Bush: Pollster Neil Newhouse and media consultant Fred Davis.

**Larry Klayman**

A 52-year-old lawyer from Miami, Larry Klayman made his reputation as the founder of Judicial Watch, a Washington-based conservative court and government watchdog that has sued Democratic and Republican administrations for access to records.

Although he has never held elective office, Klayman has plenty of government and Washington experience -- including a stint as a prosecutor in the Reagan Justice Department -- that he says will help him navigate the Senate.

"I'm not a recycled career politician, but it's important to have experience in what goes on. I have over 20 years of that," said Klayman, who left Judicial Watch to make his Senate bid. "I don't want to be a member of the Senate club. I want to take a club to the Senate."

He chastises the current Republican leadership of Congress for a budget that has "put the government in bankruptcy." And he likens himself to Presidents Lincoln and Reagan.

"When my own party doesn't do the right thing, I'll be the first to speak out," he said. "That's what Lincoln did. And that's what Reagan did."

Klayman gained notoriety by suing the Clinton White House several times and even the Bush administration, seeking access to records of the energy task force headed by Vice President Dick Cheney. He advocates abolishing the IRS, the forcible removal of Cuban dictator Fidel Castro and psychological testing for judges.

Klayman says he wants to use the powers of a U.S. Senate post to "run a law firm out of the Senate," to investigate, or even sue, government officials and federal agencies for wrongdoing, and to expose corruption.

**William "Billy" Kogut**

A 49-year-old Ormond Beach real estate agent and former city councilman in Wallington, N.J., Billy Kogut moved to Florida in 1996. He says his "strong fiscal conservative" views make him an appealing candidate to those who are frustrated with government spending and experienced politicians.

He says he will accept no campaign contributions, and will rely mainly on appearances on local radio stations and newspaper interviews to promote his candidacy.

Kogut said he decided to run because he is bothered by ongoing foreign investment in the United States and spending on welfare services for those who immigrate here. He wants to radically trim government spending, especially on social services for those who are foreign-born. "I have a problem with people coming across the border here and applying for welfare or such services," he said.

His career began with a liquor-packaging business in New Jersey. He owned a construction company, and now manages numerous properties in and around Volusia County.

**Sonya March**

A newcomer on Florida's political scene, Sonya March is a St. Petersburg patent lawyer and U.S. Air Force Academy graduate and pilot.

After leaving the Air Force in 1991, she obtained her master's degree and then a law degree from Stetson University. The 41-year-old has never served in public office, has raised little money to date and is considered in the bottom tier of candidates -- but she is constantly on the road to attend speaking engagements.

March said she is seeking the U.S. Senate seat because she is committed "to serve God and country." She wants to lead the fight for a constitutional amendment to balance the budget, to prohibit Congress from raiding Social Security trust funds, to abolish the IRS and to win equal opportunity and pay for women.

Prompted in part by the political success of an academy classmate who won election to a New Mexico congressional seat without prior experience, March was the first woman to jump into the primary battle.

"It was a wild card and I decided to go for it," she said. "I thought it would be good to have someone with character and integrity  to increase the faith in our government leaders."

**Mel Martinez**

Although he is a late entry into the race, Mel Martinez has friends in high places -- the White House and the Republican hierarchy who helped recruit him for the campaign.

It's a connection that Martinez doesn't deny and he reinforces it on the campaign trail.

Martinez resigned his post as head of the U.S. Department of Housing and Urban Development to return to Florida and make a run for the open Senate seat. Other candidates have tried to paint Martinez as the outsider, a conservative wannabe with moderate leanings who has been foisted on them by Karl Rove, the president's political adviser.

But his ability to appeal to the more moderate wing of the party was a reason he was selected in 1994 to be a running mate for his longtime friend and Republican gubernatorial candidate Ken Conner.

"I have served a president who most people would judge a conservative. I'm a conservative in the same vein as George W. Bush, the compassionate conservative camp," said Martinez.

That failed run for lieutenant governor in 1994 was Martinez's first bid for public office, but after serving on the Orlando Utilities Commission he decided to run for and won the post of Orange County mayor in 1998 -- with the help of Democratic voters.

Martinez sees the Republican primary as a battle for Florida's I-4 corridor. That's where he sees his strength, especially in his home area of Orlando and in Tampa.

Now 57 years old, Martinez was only 15 when he came to the United States as part of Operation Peter Pan, a secret airlift that brought 14,000 Cuban children to the country in 1962.

"I can identify with the threats we are living under today because I had to leave my home once," he said. "I'm a convert to Americanism. I wasn't born to it, so I have a real passion for it. And I think it's important we protect our freedoms."

In that vein, Martinez took a high-profile stand in the Elián González controversy, testifying before the Senate Judiciary Committee and urging that the boy not be sent back to Cuba.

A strong supporter of George W. Bush during the 2000 election, Martinez was co-chairman of Bush's Florida campaign.

## Bill McCollum

A 20-year veteran of the U.S. House, Bill McCollum lost a bitterly contested U.S. Senate race in 2000 to Democrat Bill Nelson. But he's back again, leading the eight-person Republican primary field in statewide polls.

To date, he's spent more than $1.3 million in his new pitch to voters, trying to build on his already considerable name recognition. He's also focusing more this time on building grass roots organizations in counties around the state.

"The race is still to be run," he cautions. "I feel good we have a lead over everyone, but I know that someone will put a run on us at the end."

The 59-year-old lawyer began the race in February 2003 as a ready and willing partner to support President George W. Bush.

McCollum points to his experience in Congress and repeatedly stresses what he sees as the principal difference between himself and others in the race: "I'm the only candidate of either political party who doesn't need on-the-job training to go to the U.S. Senate. That's the message of my campaign."

His honorary campaign chairman is former U.S. Sen. Connie Mack and he's picked up several endorsements from legislative leaders and mayors around the state, including Fort Lauderdale Mayor Jim Naugle, a Democrat.

In Congress, McCollum was viewed as an archconservative and highly partisan, hotly defending the Reagan administration during the Iran-Contra hearings and becoming a high-profile House manager during the impeachment and trial of President Bill Clinton. The father of three sons who also has one grandson, McCollum says he got into this year's race because of them and Sept. 11, 2001.

"I don't go anywhere I don't tell people that's what the future is about. The race is for them," he said.

With an extensive background in terrorism and security issues from his years in Congress, McCollum said he feels strongly that he can help the country by being in Washington. McCollum was raised in Brooksville, a solidly Democratic area of Central Florida where his father was the postmaster and his grandfather was a Republican. He attended the University of Florida, , went to law school and then served in the U.S. Navy from 1969 to 1972 as a lawyer.

### Karen Saull

A first-time candidate, Karen Saull is the wife of Jeffrey Saull, a prominent Vero Beach businessman who is leading a statewide constitutional amendment drive to cut property taxes by doubling the homestead exemption. The amendment campaign, which prominently features Saull's name, has been running ads on television for several months.

The 46-year-old Karen Saull is expected to dip into the family fortune to help finance her Senate bid and her husband has already said she would have "whatever it takes" to win. The Saulls made their money from Platinum Office Products, a business that sells chairs and candles.

Major national contributors to the Republican Party, the couple last year gave $50,000 to the National Republican Senatorial Committee and $25,000 to the Republican National Committee. They have also contributed $2,000 apiece to President George W. Bush's re-election bid and, last August, gave $2,000 to the U.S. Senate bid of fellow Republican Johnnie B. Byrd.

Karen Saull has poured almost $1.2 million into the constitutional amendment drive, which began in January.

**Mark Hollis can be reached at mhollis@sun-sentinel.com or 850-224-6214. Linda Kleindienst can be reached at lkleindienst@sun-sentinel.com.**

Copyright © 2019, Sun Sentinel

**This article is related to:** Finance, Government, Laws and Legislation, National Government, Elections, Heads of State, Justice System

# EXHIBIT H


CIVIC

# Nine Companies Tied to PRISM, Obama Will Be Smacked With Class-Action Lawsuit Wednesday

AOL, Apple, Facebook, Google, Microsoft, PalTalk, Skype, Yahoo! and Youtube will be named in the suit, attorney says.

By **Steven Nelson**, Staff Writer    June 11, 2013



Attorney Larry Klayman hopes to turn up the legal heat on President Barack Obama over his administration's secret domestic surveillance programs.    📷 (EVAN VUCCI/AP)

**FORMER JUSTICE** Department prosecutor Larry Klayman amended an existing lawsuit against Verizon and a slew of Obama administration officials Monday to make it the first class-action lawsuit in response to the publication of a secret court order instructing Verizon to hand over the phone records of millions of American customers on an "ongoing, daily basis."

Klayman told U.S. News he will file a second class-action lawsuit Wednesday in the U.S. District Court for the District of Columbia targeting government officials and each of the nine companies listed in a leaked National Security Agency slideshow as participants in the government's PRISM program.

According to the slideshow, the PRISM program allows government agents direct, real-time access to the servers of nine major tech companies, including AOL, Apple, Facebook, Google, Microsoft, PalTalk, Skype, Yahoo! and YouTube.

[**UPDATE:** Lawsuit Seeks $20 Billion, Court Order to End Data Collection]

U.S. News did not seek comment from the companies, all of which have denied any knowledge of or participation in the PRISM program.

Klayman said he hopes the two lawsuits will be considered jointly as companion cases.

The class-action lawsuit against Verizon says the defendants violated customers' "reasonable expectation of privacy, free speech and association, right to be free of unreasonable searches and seizures and due process rights."

"This case challenges the legality of Defendants' participation and conduct in a secret and illegal government scheme to intercept and analyze vast quantities of domestic telephone communications," says the lawsuit against Verizon, which also names as defendants President Barack Obama, Attorney General Eric Holder, NSA director Keith Alexander and federal judge Roger Vinson, the FISA court judge who approved the leaked April order.

[**ASSANGE:** Snowden Should 'Go to Latin America']

Klayman told U.S. News the Verizon lawsuit will be served to the named defendants. "Either they file an answer or move to dismiss" the complaint, Klayman said, "[but] we're confident the case will proceed."

Within a few months, Klayman said, the court will likely define the "class" the suit seeks to represent by ruling that "everyone's in" or by allowing Verizon customers to either opt-in or out-out of the class. Currently the suit only represents a Pennsylvania couple.

Sen. Rand Paul, R-Ky., said during a Sunday appearance on Fox News that he intends to file a class-action lawsuit against Verizon and the Internet companies over the surveillance programs, but it's unclear how exactly he will proceed with the plans.

[**READ:** Patriot Act Author: Orders Violate Fourth Amendment]

"I'm going to be asking all the Internet providers and all of the phone companies: Ask your customers to join me in a class action lawsuit," Paul said Sunday. "If we get 10 million Americans saying we don't want our phone records looked at, then maybe someone will wake up and something will change in Washington."

Paul "effectively endorsed our case," Klayman said, speculating that the senator "must have known about it." Although a copy of the Verizon lawsuit was sent to Paul's office, the attorney said he received no response. Klayman founded the pro-transparency legal group Judicial Watch in 1994 and currently leads an organization called Freedom Watch.

Documents exposing the Verizon phone-record collection order - which Sen. Diane Feinstein, D-Calif., said was a routine reauthorization of a seven-year-old practice - and the NSA's PRISM program were handed over to the Guardian and Washington Post by former Booz Allen Hamilton employee Edward Snowden. He traveled to Hong Kong before leaking the documents and voluntarily revealed his identity Sunday.